IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REGINA B.,[1]                                           Case No. 6:24-cv-01969-JR

        Plaintiff,                                    OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

_____Defendant._____

RUSSO, Magistrate Judge:

      Plaintiff Regina B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

_____

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## PROCEDURAL BACKGROUND[2]

Born in November 1979, plaintiff alleges disability beginning January 16, 2018,[3] due to sleep apnea, type 2 diabetes, hypothyroidism, obesity, iron deficient anemia, depression, anxiety, and "chronic severe neck, back, and joint pain." Tr. 216, 251. Her application was denied initially and upon reconsideration. On December 11, 2023, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 33-60. On January 25, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-27. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had "not engaged in substantial gainful activity since November 15, 2020, the application date." Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "posttraumatic stress disorder (PTSD); depression; bipolar disorder; panic disorder; anxiety disorder; attention-deficit/hyperactivity disorder (ADHD); cervical, thoracic, and lumbar degenerative disc disease; left shoulder degenerative joint disease; bilateral knee patellofemoral arthritis; bilateral hip osteoarthritis; obstructive sleep apnea; and obesity." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

---

[2] The record before the Court is more than 1000 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff originally alleged disability as of August 1, 2015, but later amended her onset date through counsel. Tr. 201. Plaintiff previously applied for, and was denied, disability benefits in 2017 and 2019. Tr. 224-25. Her last most recent denial occurred on April 17, 2019. *Id.*

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a limited range of light work:

> [She can] perform light work with lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds or less frequently, sitting six hours of an eight-hour workday, and standing and walking in combination for no more than two hours of an eight-hour workday. She can occasionally reach overhead bilaterally. [Plaintiff] can never climb ladders, ropes, and scaffolds or crawl, and occasionally climb ramps and stairs, kneel, and crouch. [She] can perform simple, routine tasks, with simple work-related decisions, and occasionally interact with supervisors, coworkers, and the public. In addition to normal breaks, she would be off task four percent of the time in an eight-hour workday.

Tr. 20.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite her impairments, such as lens inserter, touchup screener, and final assembler of optical goods. Tr. 25-26.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting: (1) the medical opinion of Kelli Bosak, LCSW; (2) her subjective symptom testimony; and (3) the lay testimony.

## I.    Medical Opinion Evidence

Plaintiff asserts the ALJ erred in discrediting portions of Ms. Bosak's opinion. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."

*Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

In August 2020, plaintiff initiated care with Ms. Bosak for monthly cognitive behavioral therapy. Tr. 1239. In October 2023, Ms. Bosak completed a form in support of plaintiff's application for disability benefits. *Id.* Ms. Bosak identified plaintiff's diagnoses as "depression, resistant to treatment; panic attacks; agoraphobia; chronic insomnia; [and] chronic pain." Tr. 1240. Based on these diagnoses, she opined plaintiff "would experience marked difficulties working with the public and co-workers due to agitation, anxiety, and irritability. Her concentration and memory deficits would limit her ability to perform tasks." *Id.* Ms. Bosak went on to specify that plaintiff would not be able to "sustain a simple, routine, low stress job [that does] not require her to come into contact with the public and does not require her to work in close coordination with supervisors or co-workers," noting that plaintiff would experience "frequent absences due to [the] chronicity & severity of her mental health issues." *Id.*

In a corresponding "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form, Ms. Bosak indicated that plaintiff was markedly[4] limited in her ability to: understand and remember simple and complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Tr. 1241-42. She also opined that plaintiff was moderately limited as to her ability to carry out simple instructions and make judgments on

---

[4] "Marked" is defined as "serious limitation in this area. There is a substantial loss in the ability to effectively function." Tr. 1241. And "moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." *Id.*

simple work-related decisions. *Id*. In support of these restrictions, Ms. Bosak explained that

plaintiff had "[d]epression [that is] resistant to treatment and agoraphobia." Tr. 1242. Ms. Bosak

did not endorse any social limitations, checking a box indicating that plaintiff's "ability to interact

appropriately with supervisors, co-workers and the public, as well as respond to changes in the

routine setting" was not impacted by her impairments. *Id.*

Although Ms. Bosak denoted that the assessed limitations had been present since August

2020, plaintiff's "agoraphobia has significantly worsened in the last 6 months," such that she had

been "referred . . . to a psychiatric provider, Jamie Mayo PMHNP." *Id.* Finally, Ms. Bosak opined

plaintiff would be absent from work as a result of her medical impairments more than four days

per month. Tr. 1244.

The ALJ determined Ms. Bosak's opinion was "not persuasive." Tr. 24. Specifically, the

ALJ stated:

> Aside from the issue of a licensed clinical social worker not being an acceptable
> medical source qualified to offer an opinion on work-related function, the responses
> are internally inconsistent by reporting difficulties working with the public and
> coworkers in narrative form on page two but assessing no related limitations on
> page four. Furthermore, the degree of limitation asserted for understanding and
> remembering even simple instructions is inconsistent with [plaintiff's] normal
> mental status during multiple visits with Dr. Somera and Mayo.

Tr. 24–25.

As a preliminary matter, licensed clinical social workers are authorized to provide medical

opinions under the revised regulations. 20 C.F.R. § 416.920c(a); *see also Carrie R. C. v. Comm'r,*

*Soc. Sec. Admin.*, 2022 WL 35777, at *5 (D. Or. Jan. 4, 2022) (under the new rules for medical

opinion evidence, an ALJ must articulate the persuasiveness of each medical opinion, including

those from licensed clinical social workers); *Johnson v. Kijakazi*, 2022 WL 2593516, at *1 (9th

Cir. July 8, 2022) (licensed clinical social worker is "a medical source who [could] give a medical opinion").

And an independent review of the record reveals that the ALJ's consideration of the supportability and consistency of Ms. Bosak's opinion, along with the additional sub-factors, is not supported by substantial evidence. Notably, there is no material internal inconsistency in Ms. Bosak's report. That is, Ms. Bosak detailed plaintiff's worsening agoraphobia and severe mental health issues, and she also expressly and unambiguously stated that plaintiff would experience "marked difficulties working with the public and coworkers due to agitation, anxiety, and irritability." Tr. 1240-43. Ms. Bosak's chart notes support these social limitations. Ms. Bosak documented that plaintiff's anxiety made it difficult for her to leave home. Tr. 479, 1116, 1120. Additionally, Ms. Bosak documented plaintiff's intermittent requests to meet remotely over the phone instead of in-person due to worsening symptoms Tr. 1116, 1120, 1132.

Indeed, the ALJ determined that plaintiff experienced moderate limitation in interacting with others at step three. Tr. 19. In so finding, the ALJ relied on the reports of Dr. Somera and Ms. Mayo and, as discussed in greater detail below, those reports tend to support Ms. Bosak's opinion. Given this evidence, the fact that Ms. Bosak checked a box reflecting no social limitations in a subsequent section of her report is not a sufficient basis to reject her narrative descriptions. *Cf. Victoria H. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1232086, at *4 (D. Or. Mar. 22, 2024) ("it is the narrative written by the psychiatrist or psychologist. . .that adjudicators are to use as the [basis of the] RFC") (citation and internal quotations omitted).

Furthermore, no apparent contradiction exists between Ms. Bosak's opinion and Dr. Somera's chart notes. Plaintiff initiated a primary care relationship with Dr. Somera in January 2020. Tr. 222. In other words, unlike Ms. Bosak, Dr. Somera was not providing specialized

psychiatric care. *See Jadelynne L. v. Kijakazi*, 2022 WL 3347030, at *8 (D. Or. Aug. 11, 2022) (an ALJ may "consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, [and] the purpose of the treatment relationship" in evaluating persuasiveness and supportability). While Dr. Somera often made rote observations in the physical examination section that plaintiff's mood and affect were "normal," or that she was "[o]rient[ed] to person, place, and time," the other portions of her records tend to suggest that plaintiff experienced significant mental health symptoms. *See, e.g.*, Tr. 496.

For instance, on August 13, 2020, Dr. Somera noted a normal mental status despite plaintiff stating she had "some depressive and anxious symptoms as well as irritability" that had worsened over the past few months. Tr. 499. Plaintiff's PHQ-9 score for depression was 18 (moderately severe), and her GAD-7 score for anxiety was 12 (moderate). Tr. 490. Dr. Somera thus listed severe major depression and generalized anxiety disorder as diagnoses, referred plaintiff to behavioral health treatment with Ms. Bosak, and started plaintiff on an antidepressant. Tr. 500.

Thereafter, Dr. Somera continued to document plaintiff's reports of mental health symptoms, and PHQ-9 scores consistent with severe depression (i.e., over 20) and GAD-7 scores at the level of moderate to severe anxiety (ranging from 11 to 19). *See, e.g.*, Tr. 444, 461, 642, 666, 805, 834-35, 841-42, 863, 875, 880, 957, 978, 994, 1037, 1071, 1106. Regardless, Dr. Somera still indicated normal mood and affect in the physical exam portion of her chart notes. Tr. 642, 666, 805. Moreover, on September 29, 2022, despite denoting plaintiff's normal mood and affect, Dr. Somera observed that she had "some difficulty concentrating/focusing during the conversation." Tr. 984.

As such, given the actual tone and the content of Dr. Somera's chart notes, in conjunction with the purpose of their treating relationship, no apparent inconsistency exists. *Cf. Morgan v. Colvin*, 2013 WL 6074119, at *7 (D. Or. Nov. 13, 2013) ("rote observations recorded in plaintiff's medical record" that she "had normal muscle tone upon examination [and was] 'healthy-appearing'" had "no bearing on whether she suffers from pain, fatigue, or weakness"); *Leza v. Kijakazi*, 2022 WL 819782, at *1 (9th Cir. Mar. 17, 2022) (where the record documented persistent symptoms, the claimant's "normal" findings did not create an inconsistency sufficient to reject "the treating physicians' recommended restrictions"); *see also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and therefore did not support an adverse credibility finding).

The same is true in regard to Ms. Mayo. For example, her September 19, 2023, chart note reflects that plaintiff had intact short- and long-term memory, attention and concentration, and insight and judgment. Tr. 1248. However, at that same appointment, Ms. Mayo diagnosed plaintiff with severe recurrent major depression, generalized anxiety disorder, and chronic PTSD, noting that plaintiff's PHQ-9 score was 25 and GAD-7 score was 21. Tr. 1249. Accordingly, she concluded plaintiff's "[s]ymptomology is severe and debilitating to functioning." *Id.*

Plaintiff's mental health symptoms apparently continued to worsen thereafter, with Ms. Mayo subsequently diagnosing her with chronic bipolar II disorder (most recent episode major depressive), chronic PTSD, generalized anxiety disorder, and ADHD. Tr. 1251, 1259. Related to those diagnoses, Ms. Mayo reported plaintiff "always struggled with attention and task completion," and that her PTSD symptomology was "severe and debilitating" and "likely [to]

exacerbate [her] mood, anxiety, and attention issues." Tr. 1259. In sum, nothing in the medical records of Dr. Somera and Ms. Mayo undermines the severity of Ms. Bosak's assessed limitations.

The ALJ therefore committed reversible error in regard to the opinion of Ms. Bosak. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## II.    Plaintiff's Testimony

Plaintiff next contends the ALJ erred in discrediting her subjective symptom testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL

5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that she was unable to work due to her physical and mental impairments. Regarding her physical impairments, plaintiff testified to pain symptoms "pretty much everywhere" – i.e., her "neck, back, shoulders, hands, knees, hips, ankles and feet." Tr. 41. Plaintiff indicated she had not thought about returning to her past work as a residential aide (even though she left her last job in 2015 for reasons unrelated to her disability) because "I can't even stand long enough without pain to do a sink full of dishes at home." Tr. 40-41. In fact, plaintiff denied doing any household chores due to pain. Tr. 42. As far as treatment, plaintiff explained that she takes an over-the-counter medication, does physical therapy exercises, and sees a chiropractor; she denied having received injections Tr. 41, 43. Plaintiff reported surgery had not been recommended due to her weight and status as a smoker. Tr. 42-43.

Regarding her mental impairments, plaintiff testified to spending most of her time in her room: "I don't go downstairs. I don't go outside." Tr. 44. She explained that her PTSD symptoms worsened during the summer of 2023 after finding out her child had been abused by her ex-partner. Tr. 43. But even before that she "preferred not to" leave her home. *Id.* Plaintiff testified that her agoraphobia led her to do most of her recent mental health appointments with Ms. Bosak by phone. *Id*.

As far as activities, plaintiff endorsed "[s]tar[ing] into space a lot of the time," "painting when I'm inspired," "look[ing] on Facebook and Instagram," spending time at her best friend's

house once per month as part of her therapy and sporadically trying to go to stores like Walmart or Big Lots. Tr. 44-45, 47-48.

The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. Surrounding her physical impairments, the ALJ cited to the objective medical record and plaintiff's activities, history of conservative treatment, and improvement with medication. Tr. 21-23. With respect to her mental impairments, the ALJ cited to chart notes indicating "normal mood and affect even when reporting elevated symptoms of depression and/or anxiety," as well as her "good response" to medications. Tr. 23. He also noted "the mere fact of ongoing [counseling] does not establish significant work-related limitations." *Id.*

### A.    Physical Impairments

"Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds).

Here, substantial evidence supports the ALJ's finding as to this issue. For instance, plaintiff drove from Oregon to Texas in 2023 to help her mother move. Specifically, in January 2023, plaintiff reported that "she is looking forward to traveling to pick up her mother in Texas, and they will move her mother back to Oregon with her. She is not nervous about this drive." Tr. 1018. By March 2023, plaintiff had returned from her "month [long] road trip to Texas and back," at which point she "report[ed] no significant concerns." Tr. 1085. Indeed, the record contains no facts

showing that plaintiff suffered worsening physical symptoms because of this extensive travel. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly inferred that the plaintiff was not as physically limited as alleged based on his ability to travel to Venezuela).

Further, the record reflects that plaintiff's daily activities were more robust than those she endorsed at the hearing. Plaintiff reported caring for her youngest child, who was approximately eight years old at the start of the adjudication period, by getting them up in the morning, driving them to the bus stop, and helping them with schoolwork. Tr. 244, 411-12, 485, 926. There are also references in the record to plaintiff "homeschooling [her child] in the afternoon/evening" and being active at her child's school as an advocate for "their needs as a child on the autism spectrum" and "undergoing transition from female to male." Tr. 658, 639, 683, 926, 1096.

Additionally, in August 2020, plaintiff recounted her hobbies as "painting, reading, going for walks, and camping." Tr. 486. The only limitation she reported at that time in regard to these activities was unrelated to her health. *See id.* ("[w]as hoping to go to Loon Lake this year but can't manage due to finances"). There are other references in the record to plaintiff walking, hiking, and/or camping, although it does appear that these activities became less frequent or altogether ceased later in the adjudication period. *Compare* Tr. 821 (plaintiff reporting in April 2021 that she "[h]as been planning more camping trips and hikes, using hiking poles is helping"), *with* Tr. 966 (plaintiff reporting in September 2022 that "she can only do 1-2 household tasks per day [such] as washing a sink of dishes or sweeping dog hair off floor. Was able to go camping with a close friend, this was helpful emotionally but very difficult physically. Feels she can't camp anymore, very unstable on the ground").

As such, the ALJ reasonably inferred from the aforementioned activities that plaintiff's physical functional abilities were greater than alleged. *See Febach v. Colvin,* 580 Fed.Appx. 530,

531 (9th Cir. 2014) (ALJ is not required to accept a claimant's attempt to characterize activities as consistent with disability where those activities "could also reasonably suggest" greater functional abilities) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004)).

And, contrary to plaintiff's testimony, the record reflects that her knee pain improved with corticosteroid injections. *See* Tr. 739, 958, 1078 (noting "right knee corticosteroid injection[s]" on April 27 and May 12, 2022; plaintiff reporting her "symptoms are overall better"); *see also Jadelynne L.*, 2022 WL 3347030, at *4 (D. Or. Aug. 11, 2022) ("[a] claimant's improvement with treatment is an important indicator of the intensity and persistence of . . . symptoms") (citation and internal quotations omitted). The record likewise reflects some relief following plaintiff's left-shoulder steroid injection. *Compare* Tr. 436-37, 445-48 (plaintiff receiving a left-shoulder steroid injection in September 2020 and reporting in November 2020 that it "afforded her relief of symptoms"), *with* Tr. 736 (plaintiff indicating in February 2021 that the benefits of her left shoulder steroid injection had since worn off: "she is basically back to where she was").

## B.    Mental Impairments

As discussed in Section I, the mental health evidence suggests limited functioning and the chart notes of Dr. Somera, Ms. Mayo, and Ms. Bosak support that conclusion. Thus, given the record before the Court, it was error for the ALJ to rely on plaintiff's "normal mood and affect" to reject her subjective symptom statements concerning the extent of her mental impairments. Tr. 23; *see also Claire G. v. Berryhill*, 2019 WL 2287733, at *10 (D. Or. May 28, 2019) (where a record contains references to both normal mood and affect and to increased mental health symptoms, "[s]imply pointing to the instances of noted normal or bright mood do not, without a more thorough discussion, show a contradiction between Plaintiff's testimony and the medical record").

The ALJ also denoted chart notes indicating plaintiff "reported good response to occasional adjustments in medication." Tr. 23. There are some isolated references to improvement with medication. *See, e.g.*, Tr. 657, 985-86, 925, 1258-59. Nonetheless, as discussed in Section I, other portions of the record reflect significant and worsening mental health symptoms. *See, e.g.*, Tr. 957, 978, 994, 1037, 1071, 1106, 1258-59; *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

Finally, plaintiff's ability to interact with friends and family inside the home, and to occasionally leave the house to go to familiar places, is not indicative of greater social functioning given the overall record before the Court.

In sum, the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony surrounding her mental health impairments. The ALJ's decision is reversed as to this issue.

## III.    Lay Testimony

Plaintiff contends the ALJ erred in dismissing the lay testimony of her former significant other, David A. For initial applications filed after March 27, 2017, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 416.920c(d). The ALJ must nonetheless articulate their assessment of lay witness statements under the new regulations in the absence of countervailing Ninth Circuit precedent. *Tanya L.L. v. Comm'r Soc. Sec., 526 F. Supp. 3d 858, 869*

(D. Or. 2021); *see also* Sarah H. v. Comm'r Soc. Sec. Admin., 2025 WL 1305800, at *7 n.4 (D. Or. May 6, 2025) ("[u]nless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, [this District will] continue to require ALJs to state a germane reason for disregarding lay witness testimony" although "this issue is currently under consideration in the Ninth Circuit") (citing Hudnall v. Dudek, 130 F.4th 668, 671 (9th Cir. March 7, 2025), *vacated and withdrawn*, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025)).

In regard to the lay testimony, the ALJ remarked: "[plaintiff's] significant other completed a function report that essentially mirrors [hers]. The limitations described are not suggestive of an inability to sustain work activity within the residual functional capacity." Tr. 21. Accordingly, the ALJ's valid reasons for discounting plaintiff's subjective symptom statements with respect to her physical impairments apply equally to David A.'s similar lay testimony. *See* Molina, 674 F.3d at 1114 (if the ALJ gives clear and convincing reasons, supported by substantial evidence, for rejecting the claimant's subjective symptom statements, the ALJ need only point to those reasons when rejecting similar lay testimony).

And, although the ALJ erred in regard to plaintiff's mental impairments, David A's lay statements are not indicative of any additional concrete functional limitations, especially given that his testimony was rendered at the beginning of the adjudication period (i.e., before plaintiff's conditions apparently worsened).[5] As such, any error in regard to the lay testimony was harmless.

---

[5] In particular, David A. stated in November 2020 that plaintiff "deals with depression and anxiety," but did not need any special reminders and could prepare her own meals. Tr. 227-29. While he endorsed that plaintiff's ability to leave the house and do chores was limited by pain, he also noted she "seem[ed] to be losing [her] memory." Tr. 229-30. He nonetheless reported that plaintiff could independently attend medical appointments and read, watch television, and talk/text on her phone "[d]aily" with no problem. Tr. 230-31. Finally, he checked boxes reflecting limited memory and concentration, but did not specify any problems completing tasks or following written or spoken instructions. Tr. 232-33.

*Cf. Stout*, 454 F.3d at 1056 (failure to properly discuss lay testimony is harmless if "fully crediting the testimony [does not lead to] a different disability determination").

## IV.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error in regard to Ms. Bosak's medical opinion and plaintiff's subjective symptom testimony surrounding her mental impairments. Further proceedings would nonetheless be useful in this case because the record is ambiguous as to plaintiff's functional abilities.

On the one hand, it is undisputed that plaintiff's mental impairments are longstanding and have persisted at significant levels despite the introduction of multiple prescription medications and regular and continuing treatment since August 2020. Many of plaintiff's physical impairments are also longstanding and treatment is made more difficult by her psychological symptoms, body habitus, and smoking. On the other hand, the record reflects greater physical functional abilities

than plaintiff endorsed at the hearing. Plaintiff also experienced a number of situational stressors that appear to have exacerbated her mental health symptoms during the adjudication period. Lastly, at least some of plaintiff's mental and physical impairments appear to have worsened throughout the adjudication period, such that it is unclear if and/or when she became disabled.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the interplay between plaintiff's pain and mental health impairments, coupled with the ambiguity surrounding any potential disability onset date, the use of a medical expert specializing in the appropriate discipline would be helpful. Therefore, upon remand, the ALJ must consult a medical expert to review the entire record and opine as to plaintiff's combined functional abilities and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 18th day of November, 2025.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge